UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Tracy Alan Zornes,                              File No. 16-cv-1730 (ECT/KMM)

        Petitioner,

v.                                                      **OPINION AND ORDER**

Michelle Smith,

        Respondent.

---

Tracy Alan Zornes, *pro se*.

Robert H. Meyers, Office of the Federal Defender, Minneapolis, MN, for Petitioner Tracy Alan Zornes.[1]

Cecilia A. Knapp, Clay County Attorney's Office, Moorhead, MN, for Respondent Michelle Smith.

---

Petitioner Tracy Alan Zornes commenced this action by filing a petition for a writ of habeas corpus.  ECF No. 1.  The case is before the Court on a Report and Recommendation ("R&R") [ECF No. 62] issued by Magistrate Judge Katherine Menendez.  Magistrate Judge Menendez recommends denying the petition with respect to each of the thirteen grounds raised by Zornes.  R&R at 59.  Magistrate Judge Menendez also recommends that a certificate of appealability be issued on the question of whether the Minnesota Supreme Court's conclusion that Zornes's right to a public trial was not violated

---

[1]      Pursuant to 18 U.S.C. § 3006A, the Court appointed counsel to represent Zornes solely on the claim raised in ground one of his habeas petition.  *See* ECF No. 45; R&R at 1 n.1 [ECF No. 62].  Zornes litigated all other claims raised in his habeas petition *pro se*.

during his criminal proceedings was contrary to or involved an unreasonable application of clearly established federal law.  *Id.*  Both Zornes and Respondent Michelle Smith filed objections to the Report and Recommendation.  ECF Nos. 65, 69, 73.  Because the Parties have objected, the Report and Recommendation must be reviewed de novo pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b)(3) to the extent of those objections.  Based on that review, the Report and Recommendation will be accepted.

I[2]

Zornes raises several *pro se* objections to the Report and Recommendation.  ECF No. 65.  Two of those objections concern matters Zornes believes were not addressed in the Report and Recommendation—authority cited in his briefing regarding the issue of procedural default and a request he made previously to amend his habeas petition.  The remaining objections concern Magistrate Judge Menendez's analysis and conclusions with respect to specific grounds for relief raised in Zornes's habeas petition.

A

Zornes raises a general objection that the Report and Recommendation does not address arguments against procedural default that he raised in his briefing.  ECF No. 65 at 12.  His first argument is that the procedural bar established in *State v. Knaffla*, 243 N.W.2d 737 (Minn. 1976), should not preclude habeas relief.  A federal court generally may only consider "those claims which the petitioner has presented to the state court in accordance with state procedural rules."  *Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996) (quoting

---

[2]    The relevant facts and procedural history are set forth in great detail in the Report and Recommendation and will not be repeated here.  *See* R&R at 2–9.

2

*Satter v. Leapley*, 977 F.2d 1259, 1261 (8th Cir. 1992)).  If a petitioner has not fairly presented his claims to the state court and state procedural rules prevent a petitioner from obtaining a hearing on the merits of his or her claims, "then the petitioner is also procedurally barred from obtaining habeas relief in a federal court unless he can demonstrate either cause and actual prejudice, or that a miscarriage of justice will occur if we do not review the merits of the petition."  *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (citations omitted).  Minnesota law establishes clear procedural rules that prevented, and continue to prevent, the consideration of many of Zornes's claims on the merits in state court.  *See Knaffla*, 243 N.W.2d at 741 ("[W]here direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief."); *Colbert v. State*, 870 N.W.2d 616, 626 (Minn. 2015) (stating known claims include those that "should have been known" and *Knaffla* also applies to a petitioner's second or subsequent postconviction petition to "bar[] consideration of claims that were raised, or could have been raised, in a previous postconviction petition").  Under Minnesota law, a claim is excepted from the *Knaffla* rule only if "the defendant presents a novel legal issue or if the interests of justice require the court to review the claim." *Wright v. State*, 765 N.W.2d 85, 90 (Minn. 2009). The Minnesota Supreme Court did not find such an exception to any of Zornes's claims that it determined were barred by *Knaffla*.  Though Zornes may theoretically overcome procedural default of a particular habeas claim by showing cause for his default and actual prejudice, or that failure to consider the claim on its merits would result in a miscarriage

of justice, *see McCall*, 114 F.3d at 757, it would be improper to categorically disregard the *Knaffla* rule in evaluating whether Zornes is entitled to habeas relief.

Zornes also argues that Magistrate Judge Menendez did not address his argument that the limitation on procedural default established in *Trevino v. Thaler*, 569 U.S. 413 (2013), applies.  ECF No. 65 at 12.  Zornes previously cited *Trevino* in his memorandum in opposition to Smith's August 2016 motion to dismiss his habeas petition, essentially for the premise that he had failed to raise ineffective-assistance-of-counsel claims on direct appeal because the trial court record did not contain the evidence necessary to substantiate those claims.  *See* ECF No. 24 at 2.  Smith's motion was denied, and the case was stayed while Zornes litigated his second petition for post-conviction relief.   ECF No. 28.  Notwithstanding that Magistrate Judge Menendez understandably did not address this authority in the Report and Recommendation because Zornes does not appear to have relied on *Trevino* in his briefing in support of his habeas petition, *Trevino* is of limited relevance here.  Prior to *Trevino*, the United States Supreme Court held in *Martinez v. Ryan* that a defendant may establish cause for procedural default under the following circumstances: "Where, under state law, claims of ineffective assistance of trial counsel *must* be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."  566 U.S. 1, 17 (2012) (emphasis added).  This was a "narrow exception," *see id.* at 9, to the general rule that "ineffective assistance of counsel during state post-conviction proceedings cannot serve as cause to excuse factual or procedural default,"

4

*Wooten v. Norris*, 578 F.3d 767, 778 (8th Cir. 2009) (citing *Coleman v. Thompson*, 501 U.S. 722, 752–55 (1991)).  In *Trevino*, the Court extended its holding in *Martinez* to cases in which a "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal[.]"  *Trevino*, 569 U.S. at 429.  In contrast, "Minnesota state law does not require that an ineffective-assistance-of-trial-counsel claim be raised only in a collateral—meaning post-conviction—proceeding[.]"  *Delk v. Smith*, No. 13-cv-89 (JRT/SER), 2014 WL 538586, at *14 (D. Minn. Feb. 11, 2014); *see also McClendon v. Minnesota*, No. 13-cv-2368 (PJS/HB), 2014 WL 4722490, at *7 (D. Minn. Sept. 22, 2014).  Rather, under Minnesota law, "[i]f a claim of ineffective assistance of trial counsel can be determined on the basis of the trial record, the claim must be brought on direct appeal or it is *Knaffla*-barred."  *Nissalke v. State*, 861 N.W.2d 88, 93 (Minn. 2015).  But if "such a claim requires examination of evidence outside the trial record or additional fact-finding by the postconviction court, such a claim is not *Knaffla*-barred[.]"  *Id.*  In short, Minnesota's procedural framework provides a meaningful opportunity, and in some circumstances even compels a defendant, to raise ineffective-assistance-of-trial-counsel claims on direct appeal.  Accordingly, Zornes's case does not fall within the intended scope of application of the rules established in *Martinez* and *Trevino*.

B

Zornes also objects to the absence of a ruling on his January 2018 request to amend his habeas petition.[3]  ECF No. 65 at 2; *see* Pet. Supp. Mem. at 4 [ECF No. 35].  In a supplemental memorandum in support of his habeas petition, Zornes requested permission to amend his petition "so as to consolidate the issues and better explain them."  Pet. Supp. Mem. at 4.  Zornes elaborated that he intended that "[t]he entirety of the issues in ZORNES II (Grounds 2-10) contain an Appellate Counsel claim as well as a Trial counsel claim[.]" *Id.*  In a separate objection to the Report and Recommendation, Zornes states that "it was error not to . . . allow [him] to amend his petition and add claims of Ineffective Assistance of Appellate Counsel."  ECF No. 65 at 11.  Though Magistrate Judge Menendez did not issue a formal order in response to his request, the Report and Recommendation states that Zornes "requested partway through this habeas corpus proceeding that his petition be interpreted as raising ancillary claims of ineffective assistance of trial counsel . . . and ineffective assistance of appellate counsel," R&R at 13–14, and considers the viability of those claims throughout, *see generally id.*  Because Magistrate Judge Menendez considered the claims that Zornes asserts he would have raised in an amended petition and Zornes does not describe any other substantive amendments he would make that might lead the Court to reach a different conclusion as to one or more of his claims, formally granting Zornes's request at this juncture would be futile.  *See IBEW Local 98 Pension Fund v. Best Buy Co.*,

---

[3]     Zornes states that his request was made in February 2017, but there were no filings in this case made during that time and the record reflects that he requested to amend his petition in January 2018.

326 F.R.D. 513, 521 (D. Minn. 2018) ("A district court may refuse to grant leave to amend pleadings for 'undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party.'" (quoting *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987))).

C

Zornes raises a more specific objection to Magistrate Judge Menendez's analysis and disposition of grounds three and six of his habeas petition as being procedurally defaulted.  ECF No. 65 at 10–11  In those claims, Zornes alleges that the prosecution committed misconduct by submitting an expansive witness list containing the names of individuals it never intended to call as witnesses resulting in their exclusion from the courtroom and that his trial counsel provided constitutionally ineffective assistance by not objecting to the witness list.  ECF No. 1 at 8–10, 17.  Zornes raised those claims in his first petition for post-conviction relief in state court, and the Minnesota Supreme Court ultimately concluded that the claims were procedurally barred because review of the claims did not require the consideration of factual issues outside the trial record and Zornes knew or should have known of the issues at the time of his direct appeal.  *Zornes v. State*, 880 N.W.2d 363, 368–69 (Minn. 2016) (*Zornes II*) (citing *Knaffla*, 243 N.W.2d at 741).  Accordingly, those issues were not and cannot be fairly presented to the state court in a manner that entitles him to a ruling on the merits.

Zornes argues nonetheless that Magistrate Judge Menendez should have considered his claims on the merits because the *Knaffla* rule is "'inadequate' based upon the circumstances to warrant withdrawal of a federal remedy."  ECF No. 65 at 10.  Zornes

7

offers some explanation for his failure to raise the claims on direct appeal. He asserts that the claims required additional evidence that could only be submitted in post-conviction proceedings and that he was told by his appellate counsel that he could not raise the "'witness' issue" on direct appeal and relied on that advice. *Id.* at 11. Zornes concedes that he did not subsequently raise the issue of ineffective assistance of appellate counsel in his state-court post-conviction proceedings but asserts that he "could not 'reasonably have known'" to do so. *Id.*

Zornes's assertions are insufficient to show cause that would allow him to overcome procedural default. *See Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007) ("If a prisoner fails to demonstrate cause, the court need not address prejudice."). "Cause typically turns on whether some objective circumstance external to the defense impeded counsel from raising the claim." *Kennell v. Dormire*, 873 F.3d 637, 640 (8th Cir. 2017). Zornes does not give any indication as to what additional evidence would have been necessary for the consideration of his claims, nor does he provide any other reason to question the Minnesota Supreme Court's conclusion with respect to the adequacy of the trial record. To the extent that he seeks to show cause by claiming ineffective assistance of appellate counsel, such a claim is itself procedurally defaulted and he has not demonstrated cause with respect to that claim. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Zornes's statement that he could not have reasonably known to raise an ineffective-assistance-of-appellate-counsel claim in post-conviction proceedings based on his appellate counsel's alleged failure to raise the witness list issues on direct appeal is particularly dubious given that he raised

several other ineffective-assistance-of-appellate-counsel claims in his first post-conviction petition.  *See Zornes II*, 880 N.W.2d at 370–73.

D

Zornes also objects to Magistrate Judge Menendez's analysis of ground two of his habeas petition as "a state law claim" concerning the admissibility of evidence rather than "the Ineffective Assistance Claim he attempted to present."  ECF No. 65 at 1, 2–7.  In ground two, Zornes challenges the Minnesota Supreme Court's determination in his first post-conviction case that his trial counsel did not render constitutionally ineffective assistance by not arguing that a knife recovered at the time of Zornes's arrest could not have inflicted specific wounds and not presenting expert testimony regarding wound incompatibility.  ECF No. 1 at 7–8.  As Magistrate Judge Menendez indicated, whether his trial counsel's assistance was constitutionally ineffective depends on the objective reasonableness of his trial counsel's actions, and the reasonableness of his trial counsel's actions is necessarily judged by whether the argument and expert testimony desired by Zornes was likely to result in the exclusion of the knife from evidence or otherwise refute the state's evidence.  *See* R&R at 52; *see also Strickland v. Washington*, 466 U.S. 668, 689 (1984) ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (quotation omitted)).  To the extent that Zornes now argues that the Minnesota Supreme Court inaccurately limited its consideration of his ineffective-assistance claim to his trial counsel's lack of success in getting the knife excluded and did

9

not consider a broader argument that his trial counsel failed to properly rebut the state's evidence, *see* ECF No. 65 at 5, it is notable that the Minnesota Supreme Court expressly stated that Zornes's trial counsel "did not stop at seeking exclusion of the evidence," *Zornes II*, 880 N.W.2d at 370.  Indeed, on cross-examination of the medical examiner, Zornes's trial counsel "established that the examiner could not say that the victims' wounds were caused by the specific tools found at the campsite," and during closing argument, his trial counsel "emphasized . . . that none of the items found at the campsite, including the pocketknife, 'yielded anything that would connect those items to the crimes.'"   *Id.* Additionally, the Minnesota Supreme Court's reasoning that Zornes's trial counsel could reasonably have concluded not to pursue a wound-incompatibility argument as a basis for exclusion in light of the full scope of the autopsy reports, also applies to any decision made by Zornes's trial counsel not to hire a wound-incompatibility expert to rebut the state's evidence.  *See id.*  Zornes has not shown, on the record before the Minnesota Supreme Court at the time of his first petition for post-conviction relief, that his trial counsel's actions, or lack thereof, were anything other than "the exercise of reasonable professional judgment."  *See Strickland*, 466 U.S. at 690.  Accordingly, Zornes is not entitled to habeas relief on the ineffective-assistance claim raised in ground two of his petition.[4]

---

[4]     Zornes alternatively argues that the Minnesota Supreme Court only made a determination as to the admissibility of the items recovered at the time of his arrest and that it never made a determination on the merits of the ineffective-assistance-of-trial-counsel claim raised in ground two of his habeas petition.  This argument is plainly refuted by the text of the court's opinion in *Zornes II*, 880 N.W.2d at 369–70 ("We conclude that, even if th[e] issue [of whether his trial counsel was ineffective] is not *Knaffla*-barred, the postconviction court did not abuse its discretion in denying the claim without a hearing,

E

Zornes similarly argues that the Report and Recommendation "misconstrues" the claim in ground thirteen of his habeas petition as a state-law claim rather than an ineffective-assistance-of-counsel claim based on his trial counsel's failure to investigate. ECF No. 65 at 7–10. But Zornes's claim in ground thirteen, which is related to his claim in ground two, principally arises from a state-law claim for relief in his second post-conviction petition based on newly-discovered evidence. ECF No. 1 at 24; *see Zornes v. State*, 903 N.W.2d 411, 419–20 (Minn. 2017) (*Zornes III*). The Minnesota Supreme Court considered the claim on its merits and determined that Zornes was not entitled to a new trial under state law based on an expert forensic report he commissioned, as the report's conclusion that the items recovered from Zornes at the time of his arrest could not have caused some of the victims' wounds was consistent with the facts established at trial and not newly-discovered evidence. *Zornes III*, 903 N.W.2d at 419–20. This state-court determination on a state-law question will not be reexamined here. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). However, Zornes also raised an argument in his second post-conviction petition that "his lawyer's investigation was unreasonable because it failed to uncover the evidence underlying his claims of newly discovered evidence." *Zornes III*, 903 N.W.2d at 420. The Minnesota Supreme Court determined that this ineffective-assistance claim was *Knaffla*-barred because Zornes should have known of the claim at

---

because the postconviction files and the trial court record conclusively show that Zornes is not entitled to relief on this basis.").

trial and did not raise it on direct appeal. *Id.* at 421. Zornes did not challenge this conclusion in his habeas petition, *see* ECF No. 1 at 24, but raised the issue in his supporting memorandum, ECF No. 19 at 43–44. Contrary to Zornes's objection, in the "interests of justice," Magistrate Judge Menendez considered an ineffective-assistance claim "implied by" ground thirteen of Zornes's habeas petition premised on his trial counsel's failure to pursue additional forensic evidence regarding wound incompatibility. *See* R&R at 56–57. Such a claim overlaps substantially with ground two of Zornes's habeas petition, and, as discussed above, Zornes is not entitled to habeas relief on this basis.

Zornes's briefing and objections indicate that he perhaps intended to raise a broader claim of ineffective assistance to encompass his trial counsel's failure to investigate other aspects of his case. For example, Zornes points to evidence of an alternative perpetrator as an example of "avenues of investigation that went unexplored." ECF No. 65 at 9–10; ECF No. 19 at 32–42. Zornes seeks to overcome procedural default of such a claim, and seemingly his other procedurally-defaulted constitutional claims as well, *see* ECF No. 65 at 12, through a showing of actual innocence, in order to bring himself "within the narrow class of cases . . . implicating a fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 314–15 (1995) (quotation omitted) (stating a procedural claim of innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits" (quotation omitted)); *see McCall*, 114 F.3d at 757. This so-called "gateway standard" for reviving procedurally-defaulted claims requires a habeas petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually

CASE 0:16-cv-01730-ECT-KMM   Document 74   Filed 07/27/20   Page 13 of 24

innocent." *Schlup*, 513 U.S. at 327 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

A habeas petitioner must establish with "new reliable evidence," that "it is more likely than

not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."

*House v. Bell*, 547 U.S. 518, 536–37 (2006) (quoting *Schlup*, 513 U.S. at 327).   New

evidence is evidence that "was not available at trial through the exercise of due diligence."

*Kidd v. Norman*, 651 F.3d 947, 953–54 (8th Cir. 2011) (recognizing a circuit split regarding

the "meaning of 'new' evidence in cases where one or more of the procedurally defaulted

claims are claims involving trial counsel's alleged ineffectiveness in failing to discover or

present evidence of the petitioner's innocence").   In evaluating the adequacy of a

petitioner's showing, a district court "is not bound by the rules of admissibility that would

govern at trial."   *Schlup*, 513 U.S. at 327.   "[H]abeas corpus petitions that advance a

substantial claim of actual innocence are extremely rare."   *Id.* at 321; *see House*, 547 U.S.

at 538 (stating the gateway standard is "demanding and permits review only in the

extraordinary case" (quotation omitted)).

The "new evidence" offered by Zornes is not sufficient to meet this stringent

standard.   *See* ECF No. 65 at 9–10, 13–15.   Critically, much, if not all, of the evidence

Zornes offers was available at the time of trial through due diligence.   Even if this were not

the case, the evidence is not inherently exculpatory and does not call into question the

significant circumstantial evidence supporting his conviction.   *See State v. Zornes*, 831

N.W.2d 609, 623 (Minn. 2013) (*Zornes I*); R&R at 55.   Moreover, some of his "new

evidence" is not evidence at all, but rather his own interpretation of the evidence offered

by the prosecution at trial that was considered by the jury in reaching their verdict.   *See*

13

ECF No. 65 at 13–15.  In all, Zornes has not shown that it is "more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt."  *See House*, 547 U.S. at 536–37.[5]

## II

Zornes, through counsel, also objects to Magistrate Judge Menendez's conclusion that he is not entitled to habeas relief on his claim in ground one of his petition that his Sixth Amendment right to a public trial was violated by the exclusion of particular individuals from the courtroom during voir dire.  ECF No. 69; *see* R&R at 39–48.  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that an application for a writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings" unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. § 2254(d)(1).  "A state court decision is 'contrary to' clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court reaches the opposite result in a case involving facts that are materially indistinguishable from relevant Supreme Court precedent."  *Smith*

---

[5]      Zornes alternatively requests a certificate of appealability as to the claims raised in grounds two and thirteen of his habeas petition.  The issuance of a certificate of appealability requires a petitioner to make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris,* 133 F.3d 565, 569 (8th Cir. 1997).  Zornes has not made such a showing as to those claims.

*v. Titus*, 958 F.3d 687, 691 (8th Cir. 2020) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). "An 'unreasonable application' of clearly established federal law 'occurs when a state court correctly identifies the governing legal standard but either unreasonably applies it to the facts of the particular case or unreasonably extends or refuses to extend the legal standard to a new context.'" *Id.* (quoting *Munt v. Grandlienard*, 829 F.3d 610, 614 (8th Cir. 2016)); *see also Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) ("Relief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable."). The requirements of § 2254(d)(1) are "meant to be difficult, because AEDPA 'reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems.'" *Smith*, 958 F.3d at 691 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (internal quotation omitted)).

The United States Constitution confers on criminal defendants the right to a public trial. U.S. Const. Amend. VI. "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *Waller v. Georgia,* 467 U.S. 39, 46 (1984) (quotation omitted). In *Waller*, the United States Supreme Court held that closure of a courtroom during a pretrial suppression hearing implicates a defendant's Sixth Amendment right to a public trial and that "any closure of a suppression hearing over the objections of the accused" must meet four requirements to be justified. *Id.* at 46–48. "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the

trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Id.* at 48 (citing *Press-Enterprise Co. v. Superior Ct.*, 464 U.S. 501, 511–12 (1984), in which the Court concluded that the press and public have a qualified First Amendment right to attend voir dire proceedings). In *Presley v. Georgia*, the United States Supreme Court extended the Sixth Amendment right to a public trial to voir dire proceedings and applied the *Waller* test before concluding that the trial court had failed to consider reasonable alternatives to closure and remanding the case for further proceedings. 558 U.S. 209, 212–16 (2010).

In Zornes's case, the Minnesota Supreme Court concluded that exclusion of Zornes's girlfriend, who was on the witness list, was within the district court's discretion to sequester potential witnesses during trial and that removal of a victim's brother from the courtroom, who was no longer on the witness list, was "too trivial" to implicate Zornes's constitutional right to a public trial. *Zornes I*, 831 N.W.2d at 618–21. In his habeas petition, Zornes alleges that the actual exclusion of these two individuals, as well as the implicit exclusion of everyone on the prosecution's lengthy witness list, violated his Sixth Amendment right to a public trial. ECF No. 1 at 5. In her analysis, Magistrate Judge Menendez distinguished Zornes's case from *Waller* and *Presley* on the basis that Zornes's case involved partial closure of the courtroom to particular individuals rather than total closure to all members of the public. R&R at 42–43. Magistrate Judge Menendez reasoned that, because the United States Supreme Court has not directly addressed the applicability of the *Waller* test to partial closures, the Minnesota Supreme Court did not reach a conclusion that was contrary to, or that involved an unreasonable application of, clearly

16

established federal law.  *Id.* at 42–48.  Magistrate Judge Menendez noted that, although the triviality exception applied by the Minnesota Supreme Court does not seem to comport with clearly established federal law, *id.* at 44, the court's ultimate decision that Zornes's constitutional right to a public trial was not violated is not erroneous in light of the standard of review imposed by AEDPA, *id.* at 45–48.

Zornes argues that the Minnesota Supreme Court's decision was contrary to the United States Supreme Court's decisions in *Waller* and *Presley* for two reasons.  First, Zornes asserts that clearly established federal law holds that the *Waller* test applies to "any closure."  ECF No. 69 at 3–10; *see Waller*, 467 U.S. at 47 ("[W]e hold that under the Sixth Amendment any closure of a suppression hearing over the objections of the accused must meet the tests set out in *Press-Enterprise* and its predecessors."); *see also Presley*, 558 U.S. at 213 ("*Waller* provided standards for courts to apply before excluding the public from any stage of a criminal trial[.]").  Second, Zornes contends that the facts underlying his claim are indistinguishable from the circumstances in *Presley*, in which the Court recognized that the right to a public trial extends to voir dire proceedings.  ECF No. 69 at 11–15.

The courtroom closures addressed by the Court in *Waller* and *Presley* were total closures of the courtroom, *i.e.*, "an exclusion of members of the public and the press."  *See United States v. Thunder*, 438 F.3d 866, 868 (8th Cir. 2006).  In *Waller*, the state court "ordered the suppression hearing closed to all persons other than witnesses, court personnel, the parties, and the lawyers."  467 U.S. at 42.  In *Presley*, though only one observer, the defendant's uncle, actually was excluded from the courtroom, both the

Supreme Court of Georgia and the United States Supreme Court's analyses indicate they understood the courtroom to have been closed to all potential spectators. *See* 558 U.S. at 210–11; *Presley v. State*, 674 S.E.2d 909, 910–11 (Ga. 2009). Unlike *Waller* and *Presley*, Zornes's case did not involve a total closure of the courtroom to members of the public and press but primarily concerned the exclusion of anticipated witnesses. In Zornes's case, only two individuals were excluded from the courtroom, one of whom was a witness, and the state court's reasoning indicates that any further exclusions would seemingly have been limited to individuals on the prosecution's witness list. *See Zornes I*, 831 N.W.2d at 618– 21. The witness list was, unquestionably, lengthy, but the exclusion of numerous witnesses is not "equal" to the exclusion of the public as Zornes suggests. *See* ECF No. 69 at 14; *Geders v. United States*, 425 U.S. 80, 87 (1976) ("The judge's power to control the progress and, within the limits of the adversary system, the shape of the trial includes broad power to sequester witnesses before, during, and after their testimony.") Zornes's case is therefore factually distinguishable from relevant Supreme Court precedent.

When no case from the United States Supreme Court "confront[s] 'the specific question presented . . .' the state court's decision could not be 'contrary to' any [of its] holding[s]." *Woods v. Donald*, 575 U.S. 312, 317 (2015) (quoting *Lopez v. Smith*, 574 U.S. 1, 6 (2014) (per curiam)). "Clearly established Federal law" means "the holdings, as opposed to the dicta, of [the United States Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. The United States Supreme Court "has never addressed the lawfulness of partial closures." *Irby v. Smith*, No. 15-cv-1997 (PJS/TNL), 2016 WL 3255019, at *2 (D. Minn. June 13, 2016) (citing *Garcia v.*

*Bertsch*, 470 F.3d 748, 754 (8th Cir. 2006) and collecting cases); *see also, e.g.*, *Alarcia v. Remington*, No. SA CV 10-447-PSG (SH), 2010 WL 3766337, at *8 (C.D. Cal. Sept. 10, 2010) ("Petitioner has failed to cite, and the Court has been unable to locate, a single United States Supreme Court case which addresses the Sixth Amendment right to a public trial in the context of a partial closure, such as where the trial court excluded certain witnesses from proceedings that were open to the general public.").  Indeed, the Eighth Circuit, and several other circuit courts of appeals, have denied habeas claims involving partial closures, recognizing the Court's silence on this issue and distinguishing *Waller*. *See, e.g.*, *Enriquez v. Sec'y*, 662 F. App'x 650, 654–56 (11th Cir. 2016) (per curiam); *Drummond v. Houk*, 797 F.3d 400, 402–04 (6th Cir. 2015); *Angiano v. Scribner*, 366 F. App'x 726, 726–27 (9th Cir. 2010) (mem.); *Garcia*, 470 F.3d at 754.  Though the expansive reading of *Waller* that Zornes encourages may well be a reasonable interpretation, absent caselaw from the United States Supreme Court directly confronting the issue of partial closure, it is impossible to conclude that the Minnesota Supreme Court's decision conflicts with any holding of the United States Supreme Court.

Zornes further argues that the Minnesota Supreme Court failed to identify the governing legal standard and apply it to his claims and asserts that it was objectively unreasonable for the Minnesota Supreme Court to apply precedent concerning witness sequestration and its own triviality test instead of the test established in *Waller*.  ECF No. 69 at 16–26.  To obtain relief, a habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Harrington*, 562 U.S. at 103. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the United States Supreme] Court." *Id.* at 101 (quoting *Knowles v. Mirzayance,* 556 U.S. 111, 122 (2009) (internal quotation marks omitted)). As noted in a prior decision from this District, there is "great difficulty" in "squaring" the Minnesota Supreme Court's triviality exception "with the clearly established federal law of the Supreme Court of the United States." *Smith v. Smith*, No. 17-cv-673 (JRT/TNL), 2018 WL 3696601, at *7 (D. Minn. Aug. 3, 2018), *aff'd sub nom.*, *Smith v. Titus*, 958 F.3d 687 (8th Cir. 2020). However, the limited precedent of the United States Supreme Court regarding a defendant's constitutional right to a public trial, and absence of a case squarely establishing a legal rule with respect to partial closures, let alone partial closures that involve the exclusion of witnesses, compels the conclusion that the Minnesota Supreme Court was not objectively unreasonable in not applying the *Waller* standard in Zornes's case. Moreover, recognizing that the Minnesota Supreme Court also did not apply the modified-*Waller* test adopted by many circuit courts of appeals to evaluate partial courtroom closures, *see Garcia*, 470 F.3d at 752–53, and that the United States Supreme Court also has not addressed the propriety of that test, the mere fact that courts have taken differing approaches in partial closure cases lends support to the conclusion that any alleged error in the state court's ruling here is subject to "fairminded disagreement." Because Zornes has not shown that the Minnesota Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, he is not entitled to habeas relief on this claim.

III

Smith objects to Magistrate Judge Menendez's recommendation that a certificate of appealability be issued on the question of whether the Minnesota Supreme Court's conclusion that Zornes's right to a public trial was not violated during his criminal proceedings was contrary to or involved an unreasonable application of clearly established federal law.  ECF No. 73; *see* R&R at 58.  Smith argues that a certificate of appealability should not be issued because denial of Zornes's petition with respect to this issue is warranted and the issue is not debatable among reasonable jurists.

A petitioner seeking a writ of habeas corpus pursuant to 28 U.S.C.§ 2254 may not appeal an adverse ruling unless the district court issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A).  A certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right."  *Id.* § 2253(c)(2). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris,* 133 F.3d 565, 569 (8th Cir. 1997).

Smith contends that a certificate of appealability should not be issued, not only because there is no clearly established federal law requiring the application of *Waller* to partial closures, but, alternatively, because either there was no courtroom closure in Zornes's case or Zornes waived his claim by inviting closure.  ECF No. 73 at 5–11.  For these reasons, Smith argues that no "reasonable jurists would resolve this issue any differently than the Minnesota Supreme Court[.]"  *Id.* at 12.  Smith also asserts that the Report and Recommendation mistakenly relies on facts concerning the sequestration of

potential witnesses in concluding that Zornes made a substantial showing that his constitutional right to a public trial was violated and that only the removal of the single non-witness should be considered. *Id.* at 2–3 (citing R&R at 58).

Even limiting the scope of the closure issue to removal of the non-witness, Zornes has made an adequate showing to warrant a certificate of appealability. The triviality exception applied by the Minnesota Supreme Court, though perhaps supported by decisions from the circuit courts of appeals, *see id.* at 11–12, has no foundation in United States Supreme Court caselaw. Although the existence of those decisions may lend credence to the view that *Waller* does not apply to "any closure," it does not render Zornes's position on the issue unreasonable. Smith's assertions that there was no closure because the victim's brother was placed in an observation room and, alternatively, that "the law of the circuit" is clear that Zornes waived his claim by inviting closure, only raise additional unresolved questions as to the applicability of *Waller*. The Minnesota Supreme Court expressly declined to decide "whether the alleged error was invited by the defendant; to what extent, if any, removal of the brother amounted to a partial courtroom closure; or the significance of his placement in an observation room." *Zornes I*, 831 N.W.2d at 620–21. And "*Waller* and *Presley* do not address the standard for whether an actual closure occurred in the first instance, but rather, the court's justification for the closure." *Taylor v. Dayton*, No. 16-cv-3893 (DSD/LIB), 2019 WL 1643555, at *2 (D. Minn. Apr. 16, 2019). As in other cases from this District in which certificates of appealability have been issued, Zornes's claim implicates issues left open to debate by reasonable jurists in the absence of United States Supreme Court precedent. *See, e.g.*, *Taylor*, 2019 WL 1643555, at *3; *Smith*,

2018 WL 3696601, at *12.  Accordingly, although dismissal of Zornes's habeas petition is proper at this juncture, he has shown that these "issues deserve further proceedings."  A certificate of appealability will therefore be granted as to the claim raised in ground one of Zornes's petition.

IV

Neither party has otherwise objected to Magistrate Judge Menendez's recommendations with respect to the issues raised in grounds four, five, seven, eight, nine, ten, eleven, and twelve of Zornes's petition for a writ of habeas corpus.  Those recommendations are therefore reviewed for clear error.  *See* Fed. R. Civ. P. 72(b); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam).  Finding no clear error, they will be adopted.

**ORDER**

Therefore, based upon all the files, records, and proceedings in this matter, **IT IS ORDERED THAT**:

1.     Petitioner's Objections to the Report and Recommendation [ECF Nos. 65, 69] are **OVERRULED**;

2.     Respondent's Objections to the Report and Recommendation [ECF No. 73] are **OVERRULED**;

3.     The Report and Recommendation [ECF No. 62] is **ACCEPTED**;

4.     The petition for a writ of habeas corpus filed by Petitioner Tracy Alan Zornes [ECF No. 1] is **DENIED**.

5.      A certificate of appealability shall be issued on the following question:  The Minnesota Supreme Court concluded that Mr. Zornes's right to a public trial had not been violated during his criminal proceedings.  Was this conclusion contrary to, or did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, as claimed in ground one of Mr. Zornes's habeas petition?

6.      A certificate of appealability is denied on all other claims.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 27, 2020                          s/ Eric C. Tostrud
                                                       Eric C. Tostrud
                                                       United States District Court

24